

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MEM:MAA/SHP
F. #2020R00563

*610 Federal Plaza*
*Central Islip, New York 11722*

April 30, 2026

By Email and ECF

The Honorable Joan M. Azrack
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re:     United States v. Gary Johnson
         Criminal Docket No. 20-518 (S-2) (JMA)

Dear Judge Azrack:

The government respectfully submits this letter in advance of the sentencing hearing of defendant Gary Johnson in the above-referenced case, currently scheduled for May 14, 2026 at 10:00 a.m. On May 22 and May 27, 2025, following more than two weeks of trial, the jury returned verdicts of guilty on Counts Three through Twenty-Four;[1] returned a verdict of not guilty on Count Twenty-Six; and failed to return verdicts on Counts One, Two, and Twenty-Five. Specifically, the jury found Johnson guilty of (1) distribution of and possession with intent to distribute controlled substances, specifically, substances containing heroin, cocaine base, and/or fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts Three, Six through Eight, and Ten through Twenty-Three); (2) distribution of controlled substances, specifically, substances containing fentanyl, which caused serious bodily injury to John Doe #1 and Jane Doe #1, respectively, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts Four and Five); (3) distribution of controlled substances, specifically, substances containing fentanyl and cocaine base, which caused serious bodily injury to John Doe #2, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count Nine); and (6) possession of a firearm following a felony conviction, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (Count Twenty-Four). The applicable sentencing range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") is life imprisonment. Presentence Investigation Report ("PSR") ¶ 99. In light of the seriousness of the defendant's conduct, the gravity of the offenses for which he was convicted, his prior criminal

---

[1]     The jury returned a verdict of guilty on Count Ten's lesser-included charge of distribution of cocaine base and fentanyl to Jane Doe #2, and returned a verdict of not guilty as to the charge of distribution of cocaine base and fentanyl causing the death of Jane Doe #2.

history, and for the additional reasons described below, the government respectfully submits that a custodial sentence of 540 months, which is below the applicable Guidelines range, is appropriate.

## I.     Background

As shown at trial, between at least June 2013 and November 2020, the defendant, a leader of the G-Shine set of the Bloods, conspired to distribute heroin and fentanyl, and in fact distributed heroin and fentanyl with tragic consequences for those who used the drugs he sold. PSR ¶¶ 26-30, PSR First Addendum.  Specifically, in March 2020, during the course of the conspiracy, the defendant distributed fentanyl to John Doe #1 and Jane Doe #1 which resulted in both individuals overdosing and requiring life-saving medical interventions.  Id. ¶ 29.  Then, in May 2020, the defendant sold cocaine and fentanyl to another victim, John Doe #2, which resulted in his overdose and similar need for life-saving medical intervention.  Id. ¶ 30.  For a more detailed statement of the offense conduct in this case, the government refers to the Court's Memorandum & Order denying the defendant's motion for acquittal, ECF No. 219 at 3-11.

The defendant was arrested on November 19, 2020.  PSR ¶ 27.  Search warrants executed on the defendant's premises and vehicle revealed, among other things: a defaced and loaded Smith & Wesson 9mm semiautomatic pistol, ammunition, drug paraphernalia, $30,000 in cash, and clothing which the defendant had worn during certain of the recorded transactions with the confidential source.  Id.  Investigators also recovered six cell phones, several of which contained narcotics-related conversations between the defendant and his customers.  Tr. 375:10-14, 528:17-529:21, 589:11-600:14; GX 223, 225, 601, 701.

## II.     The Sentencing Guidelines

As stated in the PSR and the First Addendum to the PSR, the Probation Department ("Probation") has calculated the defendant's adjusted offense level under the Guidelines as follows:

Counts 3 through 23

| | | |
|---|---|---|
| Base Offense Level (U.S.S.G. § 2D1.1(a)(2)) | | 38 |
| Plus: | Possession of a Firearm (U.S.S.G. § 2D1.1(b)(1)) | +2 |
| Plus: | Maintaining a Premises for the Packaging of Drugs (U.S.S.G. § 2D1.1(b)(12)) | +2 |
| Plus: | Knowingly Misrepresenting/Marketing Fentanyl (U.S.S.G. § 2D1.1(b)(13)(A)) | +4 |
| Total: | | 46 |

2

Count 24

| | | |
|---|---|---:|
| Base Offense Level (U.S.S.G. § 2K2.1(a)(6)) | | 14 |
| Plus: | Firearm with Defaced Serial Number (U.S.S.G. § 2K2.1(b)(4)(B)) | +4 |
| Plus: | Used in Connection with Another Felony Offense (U.S.S.G. § 2K2.1(b)(5)) | +4 |
| Total: | | 22 |

Grouping Analysis

| Count/Group | Adjusted Offense Level | Units |
|---|---|---|
| Counts 3-25 | 46 | 1.0 |

Combined Adjusted Offense Level (U.S.S.G. § 3D1.4)

| | |
|---|---:|
| Greater of the Adjusted Offense Levels | 46 |
| Increase in Level | +0 |
| Total | 43[2] |

PSR ¶¶ 34-57; PSR First Addendum. Based upon an adjusted offense level of 43 and a criminal history category of V, the Guidelines imprisonment range is life. PSR ¶¶ 99. Counts Four, Five, and Nine each have a mandatory minimum term of imprisonment of 240 months. PSR ¶ 98. The government respectfully submits that the Guidelines calculation set forth in the PSR, as revised by the addendum to the PSR, is accurate and should be adopted by the Court. With respect to the defendant's Guidelines objections, see Def. Submission at 3-6, the government respectfully refers the Court to its September 23, 2025, Response to the Defendant's Objections, ECF No. 214, as well as the Second Addendum to the PSR, which responds to those objections.

III.    Legal Standard

As the Court is aware, the Sentencing Guidelines are advisory and not mandatory. See United States v. Booker, 543 U.S. 220, 246 (2005). However, the District Court "must consult those Guidelines and take them into account when sentencing." Id. at 264. As the Supreme Court has instructed, courts must "begin all sentencing proceedings by correctly calculating the applicable Guidelines range . . . [and] the Guidelines range should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007). The Court must also consider

---

[2]    Pursuant to Chapter 5, Part A (comment n.2), in "rare cases" where the total offense level is calculated in excess of 43, the offense level will be treated as a level 43.

the factors specified in 18 U.S.C. § 3553(a) and explain its chosen sentence, including any deviation from the Guidelines range.  United States v. Bonilla, 618 F.3d 102, 109 (2d Cir. 2010). A sentence should be based on the individual facts of a case and if the Court decides that a sentence outside the Guidelines range is appropriate, the Court must "ensure that the justification is sufficiently compelling to support the degree of the variance."  Gall, 552 U.S. at 50.

Although no longer mandatory, the Sentencing Guidelines are an important tool toward achieving the objective of "similar sentences for those who have committed similar crimes in similar ways."  Booker, 543 U.S. at 252.  For that reason, "the Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar."  Molina-Martinez v. United States, 578 U.S. 189, 200 (2016).  Adherence to the Guidelines helps avoid "unwarranted disparities between defendants convicted of similar conduct and with similar criminal backgrounds."  United States v. Elfgeeh, 515 F.3d 100, 139 (2d Cir. 2008).

After determining the applicable Guidelines range, the Court must turn to the factors set forth in Title 18, United States Code, Section 3553 and "impose a sentence sufficient but not greater than necessary" to achieve the purposes of sentencing.  18 U.S.C. § 3553(a).  These considerations include the need for the sentence:

> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)   to afford adequate deterrence to criminal conduct;
>
> (C)   to protect the public from further crimes of the defendant; and
>
> (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).  See also Booker, 543 U.S. at 260.  In addition to these factors, the Court must consider the nature and circumstances of the offense and the history and characteristics of the defendant; the types of sentences available; the types of sentences and the sentencing range established in the Guidelines; any pertinent policy statements from the U.S. Sentencing Commission; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims.  18 U.S.C. § 3553(a).

IV.     The Court Should Sentence the Defendant to 540 Months' Imprisonment

Considering, among other factors, the seriousness of the defendant's conduct, the defendant's prior criminal history and the need for general and specific deterrence, the government respectfully submits that a custodial sentence of 540 months, which is below the Guidelines range, is appropriate.  As discussed further below, the defendant's criminal conduct is directly responsible for the overdoses of three individuals, all of whom would have died but for the timely intervention of medical personnel.  These overdoses that the defendant caused were not an aberration, but the foreseeable result of his ongoing involvement in the distribution of lethal drugs over many years. His criminal conduct is also part of a larger pattern of criminal activity by the defendant.  The government respectfully submits that only a substantial custodial sentence will recognize the

seriousness of the defendant's conduct, promote respect for the law, provide adequate deterrence and protect the public. See 18 U.S.C. § 3553(a). A sentence of 540 months' imprisonment would be sufficient, but not greater than necessary, to achieve the goals of sentencing in this case. See id.

### A. A Significant Variance from the Sentencing Guidelines Is Not Warranted

At the outset, the government strongly disagrees with the Probation Department's recommended sentence of 20 years in custody, which is significantly below the Guidelines range and is the mandatory minimum sentence the defendant can receive. As noted above, in this case, the applicable sentencing Guidelines provide for a sentence of life imprisonment. In the PSR, the Probation Department offers no basis for a downward variance, and only notes that "the defendant's actions in committing the instant offense [led to] three overdoses which resulted in hospitalizations" which the Court could consider "a basis for upward variance." PSR ¶ 115. Nevertheless, the Probation Department recommends a sentence which would result in a significant downward variance from the applicable Guidelines.

"A significant departure or variance from the recommended Guidelines range 'should be supported by a more significant justification than a minor one.'" United States v. Mumuni Saleh, 946 F.3d 97, 107 (2d Cir. 2019) (quoting Gall, 552 U.S. at 50). Even when the Court chooses to vary downward and impose a below guidelines sentence on the basis of proposed mitigating factors, the sentence must be reasonable given the totality of the circumstances. Id. at 112 (citing United States v. Cavera, 550 F.3d 180, 191 (2d Cir. 1991)).

In this case, there is simply no reasonable basis for a substantial downward variance. The defendant's conduct involved an ongoing narcotics conspiracy that led to the overdoses of at least three individuals, each of whom would have died absent medical intervention. In addition to his street-level dealing, the defendant also distributed large quantities of narcotics to other dealers, causing further damage to those in the community struggling with substance abuse. The Probation Department sets forth no reasonable basis upon which to impose a sentence significantly below the Guidelines, and the gravity of the defendant's criminal conduct weighs heavily against doing so. Here, having been convicted of causing not just one, but three overdoses resulting in serious bodily injury as part of a larger conspiracy to distribute drugs that can seriously harm and kill people, justice demands a more substantial sentence.

### B. The Seriousness of the Offense and the Need to Promote Respect for the Law

The sentence in this case must account for the profoundly serious nature of the defendant's crimes. 18 U.S.C. 3553(a)(2). As the evidence at trial demonstrated, the defendant operated a sizable drug distribution network for years, before later shifting to sell drugs to users personally. As reflected in the defendant's text messages, he communicated with these users, and with others who appeared to be distributing drugs for him, on a daily basis. This "business" had predictable and dangerous effects, resulting in customers overdosing and entering cardiac arrest. Furthermore, the defendant's operation was sophisticated. He took pains to change cell phone numbers and utilize different vehicles, among other measures, to conceal his illicit activity from

law enforcement.    Moreover, the defendant possessed a firearm and ammunition, which cooperating witnesses described as tools of the drug dealing trade.

As discussed above and as proven at trial, the defendant's conduct caused the near fatal overdoses of three individuals: John Doe #1, Jane Doe #1, and John Doe #2.  In March 2020, the defendant sold the fentanyl that sent John Doe #1 and Jane Doe #1 into cardiac arrest.  And then, in May 2020, the defendant sold the dose of fentanyl and cocaine that nearly killed John Doe #2, the father to a young child.  John Doe #1 and Jane Doe #1 later died, through separate overdoses not connected to the defendant, but their deaths show the toll the drug trade has taken on communities across Long Island.  Considering these facts, it is clear that the defendant's crimes are among the most serious offenses to come before this Court.

In addition, even beyond the overdoses, the defendant is responsible for a multitude of drug sales.  As proved at trial, the defendant sold substances containing heroin or fentanyl to a confidential informant working on behalf of the Suffolk County Police Department on 17 separate occasions.  Id.  These sales were only a small portion of the defendant's overall criminal conduct during the time period of the conspiracy.  As evidenced by cell phone messages presented at trial, the defendant had numerous customers who he kept supplied with lethal narcotics.  See GX 223, 225, 601, 701.  John Doe #1, Jane Doe #1, and John Doe #2 are just three of the many customers whose addictions led them to buy drugs from the defendant, risking their lives in the process.  The extent of the harm wrought by the defendant's conduct may never be fully known.  The scale of the defendant's criminal conduct, and its consequences, requires a significant sentence.

C.  The Need to Deter Similar Conduct

The Court must also consider the need to deter similar criminal conduct in the future.  To that end, in imposing sentence, the Court should be mindful of the widespread public health crisis caused by the proliferation of dangerous drugs like heroin and fentanyl, which has ravaged Long Island.  According to the National Institute on Drug Abuse, 72,776 overdose deaths involving synthetic opioids, such as fentanyl, were reported in 2023.  See Drug Overdose Death Rates, NAT'L INSTS. OF HEALTH, NAT'L INST. ON DRUG ABUSE, https://nida.nih.gov/research-topics/trends-statistics/overdose-death-rates (last visited April 24, 2026).  Furthermore, as testified to by an expert witness at trial, many drug users unknowingly ingest fentanyl after it is added to heroin by drug dealers, like the defendant, who do so to increase the potency of their merchandise and increase their profit margin.  Tr. 1289:15-1291:13.  "Fentanyl may be a hidden ingredient in other illegal drugs. It is often mixed with heroin, cocaine, methamphetamine . . . [and] [i]n many cases, people do not know that their drugs are tainted with fentanyl."  See Fentanyl, NAT'L INSTS. OF HEALTH, NAT'L INST. ON DRUG ABUSE, https://nida.nih.gov/research-topics/fentanyl (last visited April 24, 2026).  Even in the smallest of doses—including just 2 milligrams—fentanyl can be fatal.  See "One Pill Can Kill," U.S. DRUG ENF'T ADMIN, https://www.dea.gov/onepill (last visited April 24, 2026).  According to the Centers for Disease Control and Prevention, "[s]ynthetic opioids like fentanyl contribute to nearly 70% of overdose deaths."  See Fentanyl Facts, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/stop-overdose/caring/fentanyl-facts.html (last visited April 24, 2026).

As the Second Circuit recently noted in United States v. Wyche, a district court may properly consider the dangers of fentanyl when evaluating Section 3553(a)'s requirement that

6

a sentence consider the need to deter criminal conduct.  No. 24-2579, 2025 WL 3239763, at *5 (2d Cir. Nov. 20, 2025) (district court properly considered the Section 3553(a) factors when it, among other things, observed that "fentanyl had become a 'real scourge in this country' and that 'very few cases get more serious than this one'").  Notably, in Wyche, the Second Circuit upheld a 40-year sentence imposed on a defendant who, similarly to the instant case, distributed heroin and fentanyl which led to overdoses.  Id. at *5-6.  In the instant case, where the government proved at trial a higher number of overdoses than proved during the Wyche trial, the government respectfully submits that the Court should impose a sentence significant enough to deter others who would traffic in such lethal drugs.

   D.  The Defendant's History and Characteristics

   The defendant's conduct in this case, which spans years and multiple victims, is not an aberration, and he has an extensive criminal history related to narcotics which stretches back over 20 years.  He has previously been convicted of several serious offenses, almost all of which were related to narcotics distribution.  PSR ¶¶ 59-66.

   The defendant's history demonstrates that he is a lifelong drug trafficker, who has long been involved in a criminal enterprise that has caused pain, death and harm to the community.  The defendant's history, like the other Section 3553(a) factors, likewise counsels in favor of a significant custodial sentence.

   V.    Conclusion

   For the foregoing reasons, the government respectfully requests that the Court impose a sentence of 540 months' imprisonment.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    /s/ _____
       Meredith A. Arfa
       Stephen H. Petraeus
       Assistant U.S. Attorneys
       (718) 254-7000

cc:    Clerk of Court (JMA) (by email and ECF)
       Counsel of Record (by email and ECF)
       Patricia A. Sullivan, Supervisory U.S. Probation Officer (by email)